AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
16 Cellular Devices More Fully Described in Attachment A, )
Located at the DEA Evidence Room, 36 E. 7th Street, Suite )
1900, Cincinnati, OH 45202. )

Case No. 1:18MJ-478

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the    Southern    District of    Ohio    *(identify the person or describe property to be searched and give its location)*:

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of   21   U.S.C. §   841(a)(1) & 846  , and the application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Philip V. Brown, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/8/18

*Judge's signature*

City and state: Cincinnati, Ohio    Honorable Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE DESCRIBED AS:<br><br>Samsung - Model: SM-S820L(GP)<br>FCC ID: A3LSMG360V<br>IMEI: 990005850830341<br><br>Samsung – Model: SM-J327P<br>FCC ID: A3LSMJ327P<br>DEC: 089168896910052160<br>HEX: 35261809996240<br><br>Coolpad – Model: 3622A<br>FCC ID: R38YL3622A<br>IMEI: 861325032908880<br><br>Samsung – Model: SM-J327P<br>FCC ID: A3LSMJ327P<br>DEC: 089168896910052217<br>HEX: 35261809996279<br><br>Samsung – Model: SM-J327P<br>FCC ID: A3LSMJ327P<br>DEC: 089609933600143719<br>HEX: 35696408023167<br><br>LG – Model: LGMS330<br>FCC ID: ZNFK330<br>S/N: 606CYPY314224<br>IMEI: 351501-08-314224-2<br><br>Samsung – Model: SM-J327P<br>FCC ID: A3LSMJ327P<br>DEC: 089168896903372551<br>HEX: 35261809337607<br><br>ZTE – Model: Z320<br>IMEI: 860550030363447<br>S/N: 329F6604856A | CASE NO.<br><br><br>**UNDER SEAL** |

LG – Model: LGMS550
FCC ID: ZNFK550BN
S/N: 701VTCL072371
IMEI: 355790-08-072371-8

Alcatel – Model: one touch 901S
FCC ID: RAD162
S/N: 01264000121412

Samsung – Model: Galaxy S7
DEC: 089476327105308823

Alcatel – Model: one touch 5054N
FCC ID: 2ACCJA008
IMEI: 014679002067309

LG – Model: LGMS330
FCC ID: ZNFK330
S/N: 604CYUK941846
IMEI: 357885-07-941846-6

ZTE – Model: N817
FCC ID: SRQ-ZTEN817
S/N: 320E7532A75C

LG – Model: LG-B460
IMEI: 014109-00-160137-9
S/N: 709CYTB160137

ZTE - Model: Z233VL
IMEI: 990006871901517
S/N: 329F75181DB4

**Located at the** DEA Evidence Room
36 E. 7th Street, Suite 1900
Cincinnati, Ohio

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

2

I, Philip V. Brown, a Special Agent with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration (DEA), have been so employed since August, 2010. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 19-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I also received additional formal training from DEA to include an Internet Telecommunications Exploitation Program, which was specifically designed to assist agents in identifying and subsequently exploiting internet related devices utilized in the commission of a Controlled Substance Act (CSA) violation.

3. I have conducted investigations into criminal enterprises, narcotics investigations, organized crime, and violent crimes to include the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Your affiant has also

participated in the execution of federal search warrants and federal arrest warrants in relation to these investigations. Additionally, your affiant has participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. Your affiant has also been involved with the monitoring of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. Your affiant is familiar with their methods of concealing the whereabouts of their illegal drugs, the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations as well as the methods they use to prevent others unfamiliar with their criminal conduct from observing things indicative of drug trafficking. Your affiant is also familiar with the paranoia surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

4. During the course of my law enforcement career I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in illicit drug trafficking investigations, violent crimes investigations, and gangs and criminal enterprise investigations, ranging from street level dealers to major drug suppliers. These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction; have involved: the use of confidential informants; the analysis of

pen registers, trap and trace, and toll records; physical surveillances; electronic surveillances to include the use of poll cameras and vehicle cameras; and the execution of search warrants.

5. Through my training and experience I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hard-line telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

6. Through my training and experience, I know that those involved in the illegal sale and distribution of narcotics often store in their cellphones and other electronic devices, contact information for their associates so that they may stay in ready contact with their customers and source(s) of supply. Often the information stored in the contact list may be in the form of a code to conceal the true identity of the contact.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8. The **Subject Devices** were located on August 3, 2018, during the search of 1739 Garden Lane, Cincinnati, Ohio, referred hereinafter to as "**Subject Devices.**" The above items are currently in the custody of DEA Cincinnati.

9. The applied-for warrant would authorize the forensic examination of the Subhect Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10. In October 2017, I interviewed a cooperating defendant, hereafter referred to as CD[1], who told us that "Cheeks" was a heavy-set black male with the first name Nashon who lived in the basement of 1739 Garden Lane, Cincinnati, Ohio. SA Tyler Field provided the CD with a photograph of Nashon SANDFORD and the CD confirmed that SANDFORD was known to the CD as "Cheeks." The CD stated that SANDFORD distributes marijuana, cocaine and fentanyl from his residence. The CD clarified and stated that SANDFORD distributed multiple ounces of various controlled substances from his residence. The CD added that the CD has been inside the residence, purchasing marijuana, and observed multiple firearms inside. The CD also said that SANDFORD employed multiple local guys to distribute drugs on his behalf.

11. On March 13, 2018, a confidential source, hereafter referred to as CS, informed me that a black male known to the CS as "Cheeks" was selling various controlled substances from a basement of a residence located on Garden Lane. The CS further clarified that "Cheeks" was distributing controlled substances from his residence. The CS added that "Cheeks" employed multiple other individuals to distribute controlled substances on his behalf.

12. On July 25, 2018, United States Magistrate Judge Stephanie K. Bowman signed Search Warrant 1:18MJ-439, authorizing the search of SANDFORD's residence. The search warrant was executed on August 3, 2018. As a result of the search, law enforcement officers seized approximately twelve pounds of marijuana, three firearms, a digital scale and the **Subject Devices**. Most of the **Subject Devices** were located in the basement of the residence. SANDFORD was not

---

[1] The CD has been convicted of felony drug violations in the past and had provided information to law enforcement officers in exchange for leniency of a pending drug violation. I have been able to independently corroborate various details provided by the CD using information previously obtained during this investigation, and therefore believe that the information is reliable.

home at the time of the search warrant, but three younger black males were located in the residence during the search. In addition, I observed multiple pieces of mail and other documents, such as prescription labels, identifying Nashon SANDFORD as the resident of that location. I also observed family photographs of SANDFORD in the basement which corroborates my belief that SANDFORD was residing in the basement.

13. Based on my training, experience and conversations with other law enforcement officers, I know that drug traffickers will typically use more than one phone in furtherance of their drug-trafficking activities and will also replace these phones periodically in an attempt to thwart detection from law enforcement. Because the **Subject Devices** were located at SANDFORD's residence, along with marijuana, firearms and other drug-trafficking materials, such as plastic packaging, rubber bands and digital scales, I believe that the **Subject Devices** have been used in furtherance of drug-trafficking activities and I further believe that evidence of these drug-trafficking activities will be located on the **Subject Devices**.

14. The Subject Devices are currently in the lawful possession of the DEA. It came into the DEA possession following the search of 1739 Garden Lane, Cincinnati, Ohio.

15. The Subject Devices are currently in storage at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, OH 45202. In my training and experience, I know that the Subject Devices has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Devices first came into the possession of the DEA.

## TECHNICAL TERMS

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

7

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, I know that these type of Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

10

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Nature of* examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of these Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of* execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Devices described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

22. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet,

and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Philip V. Brown
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 8 day of August, 2018

_____
HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is:

**Subject Device 1:** Samsung - Model: SM-S820L(GP)
FCC ID: A3LSMG360V
IMEI: 990005850830341

**Subject Device 2:** Samsung – Model: SM-J327P
FCC ID: A3LSMJ327P
DEC: 089168896910052160
HEX: 35261809996240

**Subject Device 3:** Coolpad – Model: 3622A
FCC ID: R38YL3622A
IMEI: 861325032908880

**Subject Device 4:** Samsung – Model: SM-J327P
FCC ID: A3LSMJ327P
DEC: 089168896910052217
HEX: 35261809996279

**Subject Device 5:** Samsung – Model: SM-J327P
FCC ID: A3LSMJ327P
DEC: 089609933600143719
HEX: 35696408023167

**Subject Device 6:** LG – Model: LGMS330
FCC ID: ZNFK330
S/N: 606CYPY314224
IMEI: 351501-08-314224-2

**Subject Device 7:** Samsung – Model: SM-J327P
FCC ID: A3LSMJ327P
DEC: 089168896903372551
HEX: 35261809337607

**Subject Device 8:** ZTE – Model: Z320
IMEI: 860550030363447
S/N: 329F6604856A

**Subject Device 9:** LG – Model: LGMS550
FCC ID: ZNFK550BN
S/N: 701VTCL072371
IMEI: 355790-08-072371-8

**Subject Device 10:** Alcatel – Model: one touch 901S
FCC ID: RAD162
S/N: 01264000121412

**Subject Device 11:** Samsung – Model: Galaxy S7
DEC: 089476327105308823

**Subject Device 12:** Alcatel – Model: one touch 5054N
FCC ID: 2ACCJA008
IMEI: 014679002067309

**Subject Device 13:** LG – Model: LGMS330
FCC ID: ZNFK330
S/N: 604CYUK941846
IMEI: 357885-07-941846-6

**Subject Device 14:** ZTE – Model: N817
FCC ID: SRQ-ZTEN817
S/N: 320E7532A75C

**Subject Device 15:** LG – Model: LG-B460
IMEI: 014109-00-160137-9
S/N: 709CYTB160137

**Subject Device 16:** ZTE - Model: Z233VL
IMEI: 990006871901517
S/N: 329F75181DB4

hereinafter the "Subject Devices"

The above item is currently located at the DEA Evidence Room, 36 E. 7th Street, Suite 1900, Cincinnati, Ohio.

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of **21 U.S.C. §§ 841(a)(1) and 846** and involve **Nashon SANDFORD** and other yet unknown individuals including:

   a. Evidence that shows the Device was used to further facilitate the distribution of illegal narcotics;
   b. lists of customers and related identifying information;
   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
   e. any information recording schedules or travel;
   f. any and all stored telephone numbers;
   g. any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;
   h. Any and all emails, sent, received, delete, draft and/or saved;
   i. any and all voicemails;
   j. any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;
   k. Any and all data retrieved from Apps on the device;
   l. any and all entries made in a calendar and/or notebook feature;
   m. any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2. Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.